IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| TIODOSA PORTILLO<br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, *et al.*,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:26-cv-2837 (AJT-WEF) |

**ORDER**

Before the Court is Tiodosa Portillo's Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 seeking release from Immigration and Customs Enforcement ("ICE") custody on the grounds that her ongoing detention violates the Immigration and Nationality Act (the "INA"), her constitutional due process rights, and the INA's implementing regulations. Upon consideration of the filings, and for the reasons stated below, the Petition is **GRANTED**.

## I. BACKGROUND

Petitioner is a native and citizen of Honduras who is alleged to have re-entered the United States on May 6, 2013, at or near Mission, Texas. [Petition] ¶ 32–34. On May 8, 2013, Respondents reinstated her prior order of removal. [Doc. No. 4] at ¶ 12. On August 8, 2013, Petitioner claimed fear of returning to Honduras, and on September 25, 2013, USCIS made a positive reasonable fear finding and initiated withholding-only proceedings. *Id.* at ¶¶ 13–14. On January 30, 2014, an Immigration Judge ("IJ") granted Petitioner withholding of removal to Honduras under the Convention Against Torture. *Id.* at ¶ 18. Appeal of that decision was waived, rendering it administratively final. [Petition] ¶ 36. Petitioner was placed on an Order of Supervision ("OSUP") on February 4, 2014, the terms of which she has since complied with. *Id.* ¶ 38; [Doc. No. 4] at ¶

19.

On August 26, 2026, Petitioner reported for a scheduled check-in at the ICE Baltimore Field Office, as required under her OSUP, at which time she was taken into custody. [Petition] at ¶ 39; [Doc. No. 4] at ¶ 41; *see also* [Doc. No. 5] at 2, n.2 (flagging the erroneous date provided by Respondents). That day, Petitioner was "given an informal interview to respond to the reasons for revocation of release . . . ," [Doc. 4] at ¶ 20, and the "Alien Informal Interview" document was signed at 12:01:54 PM. [Doc. No. 4-3]. At 3:20 PM that day, Petitioner was served with a Notice of Removal to Mexico. [Doc. No. 4] at 20; [Doc. No. 4-2]. At 3:25 PM that day, Respondents also served Petitioner with a notice formally revoking her February 4, 2014, OSUP pursuant to 8 CFR § 241.4(*l*) (the "Notice"), signed by a Field Office Director for ICE. [Doc. No. 4-1]. The Notice indicated, by way of a checked box, that "[i]t is appropriate to enforce the removal order entered against [Petitioner] as ICE has the ability and means to effectuate [her] removal." *Id.*[1] Unlike other Notices of Revocation in similar recent Habeas petitions before this Court, which often recite the regulatory language regarding changed circumstances and "the public interest,"[2] the Notice provided no further explanation or details to supplement that reason for the revocation. *Id.* Notably, the Notice was served *after* the interview.

On August 30, 2026, Petitioner was transferred to South Carolina ICE Processing Center. [Doc. No. 4] at ¶ 21. After Petitioner expressed fear of removal to Mexico on September 1, 2026, she was referred to USCIS for a fear screening. *Id.* at ¶¶ 22–23. On September 3, 2026, Petitioner

---

[1] The Notice also noted, by way of filling out pre-set blanks on the form, that on January 30, 2014, Petitioner was ordered removed to Honduras but was subsequently granted withholding of removal to Honduras, and that "[her] case is under review for removal to an alternate country." [Doc. No. 4-1] at 1.

[2] *See, e.g.*, *Serpas v. Simon*, 2026 WL 1244544 (E.D. Va. Feb. 3, 2026); *Reyes Torres v. Mullen*, 2026 WL 1970960 (E.D. Va. July 8, 2026).

was returned to Caroline Detention Facility in Virginia, where Petitioner is currently detained, and Respondents represent that she is currently awaiting a fear screening. *Id.* at ¶¶ 24–25. With respect to her proposed removal to Mexico, no third-country screening interview has taken place or has been scheduled. *Id.*

## II. LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted).

## III. DISCUSSION

Petitioner contends that (1) her detention violates 8 U.S.C. § 1231(a)(6) and her due process rights (Counts I, IV); (2) the revocation of her OSUP violates the INA's implementing regulations and the *Accardi* doctrine (Count II); (3) her potential removal to Mexico (a third country not identified on a removal order) without IJ review of a negative fear determination violates her due process rights(Counts I, III); and (4) her detention violates 8 C.F.R. §§ 208.31 and 1208.31 (Count V). [Petition] at ¶¶ 43–66.[3] In opposition, Respondents contend that Petitioner's detention is lawful because she has been detained for less than six months and therefore satisfies *Zadvydas v. Davis*, 533 U.S. 678 (2001); they properly revoked Petitioner's OSUP; Petitioner's claim is premature; and Petitioner is not entitled to IJ review of a negative fear determination of removal to a third country. [Doc. No. 5].

### A. <u>The Revocation of Petitioner's Order of Supervision Violated *Accardi*</u>

[3] Because Respondents violated 8 C.F.R. § 241.4(*l*) in revoking Petitioner's Order of Supervision, the Court does not address Petitioner's due process claim under 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*.

Petitioner claims that the revocation of her OSUP violates the INA Regulations, 8 C.F.R. § 241.4(*l*), and the *Accardi* doctrine, which requires an agency to follow its own procedures and regulations. *See Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) ("[W]hen an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid."). Under *Accardi*, any violation of an agency's regulations is subject to vacatur as long as the Petitioner suffered prejudice as a result of the violation. *United States v. Morgan*, 193 F.3d 252, 266–67 (4th Cir. 1999).

The INA's regulations create two different types of release following an order of removal. Under 8 C.F.R. § 241.4, "DHS may release a[] [noncitizen] under an order of supervision if it determines that the [noncitizen] would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [noncitizen's] removal in the reasonably foreseeable future." *Garcia-Rivera v. Noem*, No. 1:26-CV-229-MSN-WBP, 2026 WL 1244545, at *2 n.3 (E.D. Va. Mar. 2, 2026) (quoting *Phommachak v. Wesling*, No. 25-13894-BEM, 2026 WL 157491, at *4 (D. Mass. Jan. 20, 2026)). Alternatively, DHS may release a noncitizen under 8 C.F.R. § 241.13 "based on a determination that there is no significant likelihood of removal to the country to which [the noncitizen] was ordered removed, or to a third country, in the reasonably foreseeable future." *Garcia-Rivera*, 2026 WL 1244545, at *2 n.3 (internal quotation marks omitted).

An order of release under section 241.4 may be revoked where (1) the purposes of release have been served, (2) the noncitizen violates any condition of release, (3) it is appropriate to enforce a removal order or commence removal proceedings, or (4) the conduct of the noncitizen indicates that release would no longer be appropriate. 8 C.F.R. § 241.4(*l*)(2). That regulation also requires notifying the noncitizen of the "reasons for revocation of his or her release or parole" and

afford the noncitizen "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.4(*l*)(1). As to who may exercise authority under Section 241.4(*l*)(2), the regulations provide that either the Executive Associate Commissioner ("EAC") can exercise their discretion to revoke release, or a district director can revoke release in the limited circumstance where "in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." *Id.*

Here, Respondents purported to revoke Petitioner's OSUP under Section 241.4(*l*)(2)(iii) but provided no grounds for this revocation. [Doc. No. 4-1] at 1.[4] That revocation notice was signed by a Field Office Director for ICE under a June 10, 2026 ERO delegation order, signed by the Acting Executive Associate Director, purporting to delegate the powers to revoke OSUPs to Field Office Directors and Assistant Field Office Directors. *Id.* at 2; [Doc. No. 4-5].[5]

Respondents' August 26, 2026, attempted revocation notice does not comply with the procedural requirements set forth in 8 C.F.R. § 241.4(*l*). In a similar case, *Hernandez Mendez v. Mullin*, Respondents revoked Petitioner's OSUP in violation of the applicable regulations because Respondents could not satisfy the requirements of 8 C.F.R. § 241.4(*l*) through boilerplate language that the revocation decision "is a determination that revocation is in the public interest and circumstances do not reasonably permit referral to the Executive Associate Director." 1:26-cv-

[4] Typically, Respondents have been providing, as grounds for such revocation, that DHS intends on enforcing Petitioner's removal order and made a "determination that revocation is in the public interest and circumstances do not reasonably permit referral to the Executive Associate Director of ERO." *See supra* note 2.

[5] The Court need not address the substantial issues concerning the propriety of the purported delegation since Respondents, in revoking Petitioner's OSUP, purported to do so pursuant to the requirements of 8 C.F.R. § 241.4(*l*), which Respondents failed to satisfy, independent of whether the appropriate official issued the revocation notice.

1881, [Doc. No. 8] (E.D. Va. Aug. 4, 2026). The result would be identical here even if such boilerplate language were present because, without any finding or explanation "as to why revocation of the order of supervision serves the public interest, or why circumstances did not reasonably permit referral of the case to the Executive Associate Commissioner . . . the Court cannot infer that to be the case—nor is it required to do so—where the regulations require such a determination." *Serpas v. Simon*, No. 1:25-CV-02369-AJT-WBP, 2026 WL 1244544, at *5 (E.D. Va. Feb. 3, 2026) ("[T]he requirement that a senior official make the determination to revoke release—that is, to restrict a person's liberty—is not merely a housekeeping requirement but instead part of a procedural framework, designed to insure the fair processing of an action affecting an individual, a violation of which can be deemed to be prejudicial and thus to implicate due process.") (internal quotations omitted). Here, Respondents did not even recite the applicable regulatory language, making the unlawfulness of the attempted revocation even more glaring.

For these reasons, the Court concludes that Respondents' August 26, 2026, revocation of Petitioner's OSUP was unlawful under the *Accardi* doctrine and holds, as it has repeatedly in similar recent Habeas cases, that the remedy due Petitioner is vacatur of the revocation and restoration of her prior OSUP. *See, e.g. Gittens v. Crawford*, No. 1:25-cv-02408-AJT-IDD (E.D. Va. Feb. 25, 2026).

B. <u>Petitioner is Entitled to a Fear Screening Interview as to Mexico and IJ Review of Any Negative Fear Determination</u>

In Count I, Petitioner claims that she is entitled to a fear screening and IJ review of the asylum officer's negative fear determination of her removal to Mexico, if the screening so results. [Petition] ¶¶ 61-63. As it did in both *Benitez Pineda v. Noem, et al., 1*:25-cv-02337-AJT-WBP, Doc. No. 17 (E.D. Va. Mar. 2, 2026) and *Bautista Serpas v. Simon*, 2026 WL 1244544, at *4 (E.D.

Va. Feb. 3, 2026), the Court concludes that Petitioner is entitled, as a matter of procedural due process, to IJ review of any negative fear determination to a third country of removal, as described in the regulations governing the analogous context, 8 C.F.R. §§ 208.31, 1208.31.[6]

## IV. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED** that the Petition be, and the same hereby is, **GRANTED**; and it is further

**ORDERED** that Petitioner be **RELEASED** from custody immediately subject to her October 30, 2019 Order of Supervision, which may not be revoked unless done so in compliance with the requirements of 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13, including providing an explanation concerning what efforts have been made to locate a country for removal, the name of the country to which Petitioner will be removed, the authorizations received from the third country for that removal, and what specific arrangements have been made for her deportation; and it is further

**ORDERED** that if Petitioner is again detained in compliance with the applicable regulations, Respondents and all of their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are **ENJOINED** from removing Petitioner from this judicial district and the continental United States unless (1) she has first received review by an immigration judge, pursuant to 8 C.F.R. § 208.31(g), of the United States Citizenship and Immigration Services asylum officer's negative decision regarding whether she has a reasonable fear of persecution or torture if removed to Mexico or any other country Respondents intend to remove her to; and (2) all other requirements of 8 C.F.R. § 208.31(g) have

[6] In response to the Court's initial order in this matter, Respondents argued that the factual and legal issues at issue here materially differ from those in *Benitez Pineda* in that Petitioner's fear screening has not yet occurred.

been satisfied.

The Clerk is directed to send this Order to all counsel of the record, and to terminate the case.

September 4, 2026
Alexandria, Virginia

Anthony J. Trenga
United States District Judge